CHRISTINE MALCOME, Indiv. and as Special Adm'x of the Estate of Daniel E. Malcome, Deceased, Plaintiffs-Appellants, v. TOLEDO, PEORIA AND WESTERN RAILWAY CORPORATION, Defendant-Appellee.

Fourth District   No. 4—03—0805

Argued May 11, 2004.—Opinion filed June 16, 2004.

John L. Morel (argued), of John L. Morel, P.C., of Bloomington, for appellants.

James P. McCarthy, Paul Van Lysebettens (argued), and Catherine Carlson, all of Gunty & McCarthy, of Chicago, for appellee.

JUSTICE COOK delivered the opinion of the court:

Plaintiffs, Christine Malcome, individually and as special adminis-

tratrix of the estate of Daniel Malcome, appeal the McLean County circuit court's order dismissing the complaint against defendant, Toledo, Peoria & Western Railway Corporation (Toledo). We affirm.

## I. BACKGROUND

At approximately 9:30 p.m. on November 29, 1999, Christine's husband, Daniel Malcome, was driving south along Road 1980 East in McLean County. A train belonging to Toledo was stopped on a track that crossed the road at right angles, and the third of five consecutive flatcars blocked the road. Daniel crashed into the flatcar and died as a result. Christine brought this negligence action individually and as the administratrix of Daniel's estate. The complaint alleged that Toledo was negligent in failing to provide an adequate warning of the stopped train and in creating an extrahazardous condition.

Toledo moved to dismiss for failure to state a cause of action under section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 2002)). In particular, Toledo asserted that the complaint failed to allege a duty. The trial court granted the motion but allowed Christine to amend her complaint, which she did. Toledo again moved to dismiss, and the court granted the motion, dismissing the amended complaint with prejudice. Christine filed a motion to reconsider, which the court denied. This appeal followed.

## II. ANALYSIS

A motion to dismiss under section 2—615 challenges the legal sufficiency of the complaint. *Bajwa v. Metropolitan Life Insurance Co.*, 208 Ill. 2d 414, 421, 804 N.E.2d 519, 525 (2004). Dismissal is appropriate only where, viewing the allegations in the light most favorable to the plaintiff, it is clear that no set of facts can be proved under the pleadings that will entitle the plaintiff to relief. *Bajwa*, 208 Ill. 2d at 421, 804 N.E.2d at 525. We review *de novo* a circuit court's decision to dismiss under section 2—615. *People ex rel. Ryan v. World Church of the Creator*, 198 Ill. 2d 115, 120, 760 N.E.2d 953, 956 (2001).

The key issue in this case is whether Christine adequately alleged a duty on the part of Toledo. A complaint alleging negligence must set forth facts establishing that defendant owed plaintiff a duty, breached that duty, and thereby proximately caused plaintiff injury. *Bajwa*, 208 Ill. 2d at 421, 804 N.E.2d at 526. The existence of a legal duty is a question of law to be determined by the court. *Bajwa*, 208 Ill. 2d at 422, 804 N.E.2d at 526.

■ There have been enough instances over the years of motor vehicles colliding with standing trains that the courts have developed a special rule to address the situation. Illinois's version of this rule is that "a train stopped at a crossing is generally held to be adequate

notice and warning of its presence to any traveler who is in the exercise of ordinary care for his own safety, and the railroad is under no duty to give additional signs, signals[,] or warnings." *Dunn v. Baltimore & Ohio R.R. Co.*, 127 Ill. 2d 350, 357, 537 N.E.2d 738, 741 (1989). This rule is subject to the following exception: if "special circumstances" are present, then the railroad may have a duty to provide warnings beyond the mere presence of the train. *Dunn*, 127 Ill. 2d at 357, 537 N.E.2d at 741.

The rule regarding stopped trains has its detractors. One federal court has described it as "a legal dinosaur, which, once out, tramples twentieth century negligence law and then lumbers back to its dark cave only to await another victim." *Hurst v. Union Pacific R.R. Co.*, 958 F.2d 1002, 1003 (10th Cir. 1992). The rule calls to mind the discredited "stop, look, and listen" approach that once denied recovery to a motorist who failed to take every precaution before daring to cross a railway. See *Baltimore & Ohio R.R. Co. v. Goodman*, 275 U.S. 66, 72 L. Ed. 167, 48 S. Ct. 24 (1927), *overruled in Pokora v. Wabash Ry. Co.*, 292 U.S. 98, 78 L. Ed. 1149, 54 S. Ct. 580 (1934). In placing on the motorist the burden to avoid an accident, the stopped-train rule resembles a rule of contributory negligence. *Trevino v. Union Pacific R.R. Co.*, 916 F.2d 1230, 1235 (7th Cir. 1990). Our supreme court has held, however, that the rule is concerned not with contributory negligence, but with a railroad's duty; it was therefore not affected by this state's switch to a comparative-negligence regime. *Dunn*, 127 Ill. 2d at 367, 537 N.E.2d at 745.

The *Dunn* case, like this one, involved a motorist (in that case on a motorcycle) who crashed into a stopped railroad car at approximately 9:30 p.m. *Dunn*, 127 Ill. 2d at 354, 537 N.E.2d at 739. His survivors alleged in part that the railroad was negligent in failing to warn motorists of the stopped train under the circumstances. These circumstances included darkness, vehicular traffic, a lack of lighting, and the grades surrounding the crossing. The trial court dismissed the negligence counts, and the supreme court ultimately affirmed the dismissal, holding that the complaint did not allege special circumstances sufficient to remove the case from the general rule that a stopped train warns motorists of its presence. *Dunn*, 127 Ill. 2d at 362-63, 537 N.E.2d at 743.

■ We find that *Dunn* is squarely on point and controls this case. If anything, the allegations in Christine's complaint have less substance than those in *Dunn*. The essential factual allegations of Christine's complaint reduce to this: Daniel was driving at night and hit Toledo's flatcar. This is insufficient to establish special circumstances under *Dunn*; Christine has failed to allege a duty and therefore to state a claim for relief.

Christine attempts to distinguish this case from *Dunn* on the basis that in *Dunn* considerable discovery had occurred before the case was dismissed. It is true that Christine sought discovery before her amended complaint was dismissed and never got the depositions or interrogatory responses she requested. On the other hand, she has given no indication of how the lack of discovery has affected her ability to plead a sufficient cause of action. This is not the type of case in which the defendant has exclusive control of the facts needed to plead a cause of action. See *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 110, 672 N.E.2d 1207, 1224-25 (1996). The types of things that would qualify as special circumstances so as to avoid the rule in *Dunn* generally are as available to Christine as to Toledo. See, *e.g.*, *Petricek v. Elgin, J. & E. Ry. Co.*, 21 Ill. App. 2d 60, 66, 157 N.E.2d 421, 424 (1959) (First District) (blinding snowstorm). Facts that Christine points to on appeal as tending to show special circumstances—the heights of the track and roadway, Daniel's line of vision as he drove, the fact that his speedometer was lodged at around 50 miles per hour—come from her own investigation. We conclude that the lack of discovery does not excuse Christine's failure to state a cause of action.

Christine also points out that Toledo failed to comply with a statute prohibiting a railroad from blocking a crossing for longer than 10 minutes (625 ILCS 5/18c—7402(1)(b) (West 2002)), but this observation is unavailing. The prohibition is intended to prevent traffic delays, not collisions. *Fox v. Illinois Central R.R. Co.*, 308 Ill. App. 367, 374, 31 N.E.2d 805, 808-09 (1941) (Second District). It stands to reason that if a train stopped on a crossing is notice of its own presence (as *Dunn* holds), that will remain true no matter how long the train is stopped. Whether Toledo's train was on the track for 8 minutes or for 45 minutes, as Christine claims, Toledo did not have a duty to warn Daniel absent special circumstances. Accordingly, we conclude that the trial court was correct when it determined that Christine's complaint failed to state a cause of action.

■ As for the motion to reconsider, we will not disturb the court's decision to deny such a motion absent an abuse of discretion. *Williams v. Dorsey*, 273 Ill. App. 3d 893, 903, 652 N.E.2d 1286, 1293 (1995). The purpose of a motion to reconsider is to bring to the court's attention newly discovered evidence, changes in the law, or errors in the court's previous application of existing law. *Gardner v. Navistar International Transportation Corp.*, 213 Ill. App. 3d 242, 248, 571 N.E.2d 1107, 1111 (1991). Christine's motion did no such thing, and the court was thus within its discretion to deny the motion.

## III. CONCLUSION

In light of the foregoing, we affirm the trial court's judgment.

Affirmed.

McCULLOUGH, J., concurs.

JUSTICE APPLETON, dissenting:

I respectfully dissent from the holding of the majority in this case. Without going so far as to find the stopped-train rule to be an anachronism as the Tenth Circuit colorfully did in *Hurst*, 958 F.2d 1002, I do not find the rule as most recently enunciated by our supreme court in *Dunn*, 127 Ill. 2d 350, 537 N.E.2d 738, supports the judgment entered on the pleadings here.

It is clear that *Dunn* left open the door to a plaintiff who could establish "special circumstances" that could support a duty on the part of a railroad to provide warnings beyond the mere presence of the train. I agree that plaintiff here alleged as special circumstances factors that *Dunn* specifically found not to qualify as such, *i.e.*, darkness, vehicular traffic, a lack of lighting, and the grade of the crossing.

I would find, however, that plaintiff alleged one other situational fact, which in my mind constitutes a special circumstance: that the railway cars blocking the road onto which plaintiff's decedent crashed his vehicle were not standard sized railroad cars but were rather flat or "lowboy" cars that may have presented oncoming traffic no profile that would be observable by one approaching the intersection who is driving with due and proper regard for his safety.

This is not to say that the involvement of such cars automatically creates liability for the railroad. I would suggest that more needs to be known about them, *e.g.*, their exact dimension, color, whether any reflective markings were present, *et cetera*. I conclude, however, plaintiff has sufficiently pleaded the nature of the cars to establish the potential of a special circumstance sufficient to avoid judgment on the pleadings.